IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SYNGENTA CROP PROTECTION, INC.   ) | |
|               ) | |
|      Plaintiff,       ) | |
|               ) | |
|      v.             ) | 1:02CV334 |

SYNGENTA CROP PROTECTION, INC. )
                   )
       Plaintiff,       )
                   )
       v.               )      1:02CV334
                   )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY,         )
                   )
STEPHEN L. JOHNSON, Administrator )
U.S. Environmental Protection Agency, )
                   )
MAKHTESHIM-AGAN OF NORTH )
AMERICA, INC.,             )
                   )
SIPCAM AGRO USA, INC.,     )
                   )
DREXEL CHEMICAL COMPANY, and )
                   )
ALBAUGH, INC.          )
                   )
     Defendants.      )
_____ )

MEMORANDUM OPINION

TILLEY, Chief Judge

    This suit arises from a dispute between Plaintiff Syngenta Crop Protection, Inc. ("Syngenta") and Defendants United States Environmental Protection Agency and its Administrator, Stephen L. Johnson[1] (collectively "EPA"), Makhteshim-Agan of North America, Inc. ("MANA"), Sipcam Agro USA, Inc. ("Sipcam"), Drexel

_____

    [1] This suit was initially filed against Christine Todd Whitman, the previous Administrator of the EPA, in her official capacity. The current Administrator, Stephen L. Johnson, has been substituted as the proper defendant in this case.

Chemical Company ("Drexel"), and Albaugh, Inc. ("Albaugh"), regarding registrations with the EPA of the pesticide metolachlor. This case is currently before the Court on the following motions: (1) Defendant EPA's Motion for Partial Judgment on the Pleadings [Doc. #153]; (2) Defendant Sipcam's Motion to Dismiss [Doc. #141]; and (3) Defendant MANA's Motion to Dismiss [Doc. #169].[2] For the reasons which follow, EPA's Motion for Partial Judgment on the Pleadings and Sipcam's Motion to Dismiss will be GRANTED in part and DENIED in part; and Defendant MANA's Motion to Dismiss will be DENIED.


I.

The background facts surrounding this dispute are provided below. Part A addresses the general procedures for registering a pesticide under The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136, et seq. Part B discusses the parties and the particular pesticide registrations at issue in this case.

A.

FIFRA governs the sale, distribution, and use of pesticides. In general, FIFRA requires that a pesticide be registered with EPA before it can be sold or distributed. FIFRA § 3(a), 7 U.S.C. § 136a(a). As part of the FIFRA registration

_____

[2] Several other motions pertaining to discovery are still pending before this Court. However, these motions will be addressed separately by the Magistrate Judge.

process, an applicant must meet EPA's data requirements by submitting numerous scientific studies showing that the use of the pesticide in question will not cause unreasonable adverse effects to humans or the environment. Whether or not unreasonable adverse effects are posed is determined through reference to the economic, social, and environmental costs and benefits of the use of the pesticide. FIFRA § 2, 7 U.S.C. § 136(bb).

Different types of registrations are available under FIFRA. For an "unconditional" registration to be issued, an applicant must show that the pesticide will perform its intended function without unreasonable adverse effects on the environment. FIFRA § 3(c)(5)(D), 7 U.S.C. § 136a(c)(5)(D). "Conditional" registrations are also available in certain situations. A conditional registration of a pesticide containing an active ingredient that is not contained in any currently registered pesticide is governed by FIFRA § 3(c)(7)(C).
7 U.S.C. § 136a(c)(7)(C). A conditional registration of a pesticide identical or substantially similar to an already registered pesticide is known as a "me-too" or "follow-on" registration, and is governed by FIFRA § 3(c)(7)(A). 7 U.S.C § 136a(c)(7)(A). For a pesticide to receive a conditional me-too registration, the registration of the original pesticide upon which it is based must still be active.

A me-too applicant can meet FIFRA's data requirements in one of three ways: (1) by providing new data, (2) by the "cite-all" method in which the applicant provides a general citation to all of EPA's files, or (3) by the "selective

3

cite" method in which the applicant selectively cites the data of others. <u>See</u> 40

C.F.R. § 152.86 (cite-all method); 40 C.F.R. § 152.90 (selective method).

However, under certain circumstances, a me-too registration may be issued to an

applicant who has not yet submitted all required data.  If the unconditional

registrant of the identical/similar pesticide upon which the me-too application relies

has not submitted particular required data because that data has not yet been

generated, the me-too applicant also need not immediately submit that data.

FIFRA § 3(c)(7)(A), 7 U.S.C §136a(c)(7)(A).  However, the applicant must submit

the data by the same date by which the original registrant must do so. <u>Id.</u>

Once a registration is received, the holder typically will continue to submit

such studies during the life of the registration to address new scientific

developments and changing EPA standards.  This process is generally very costly,

particularly for a registrant of a new pesticide (one not based on an already existing

registration).

In recognition of the expense associated with registration of a pesticide,

FIFRA includes provisions that protect proprietary rights in certain data submitted

to support an application.  Specifically, FIFRA § 3(c)(1)(F)(i) provides applicants

that register pesticides with new active ingredients the right to "exclusive use" of

any data used to support the registration of that new ingredient. 7 U.S.C. §

136a(c)(1)(F)(i).  The exclusive use protection lasts for a period of ten years, but

can be extended in certain circumstances. FIFRA § 3(c)(1)(F)(ii), 7 U.S.C. §

4

136a(c)(1)(F)(ii). During the exclusive use period, only the original applicant may use the data. EPA will deny an application supported by exclusive use data where the applicant is not the original applicant and owner of the data or has not received the consent of the original applicant to use the data. FIFRA § 3(c)(1)(F)(I), 7 U.S.C. § 136a(c)(1)(F)(I).

FIFRA includes several provisions designed to protect a registration holder's exclusive use rights. EPA is required to provide thirty days advance notice to the holder if his exclusive use data is relevant to another application that EPA intends to grant. 40 C.F.R. § 152.116(a). Upon request by the holder and within 30 days of the holder's receipt of such notice, EPA is to "provide the applicant's list of data requirements and method of demonstrating compliance with each data requirement." Id. The holder may then choose to challenge the issuance of a registration to the applicant through petitioning EPA in the manner outlined in 40 C.F.R. § 152.99(b) & (c). 40 C.F.R. § 152.116(b). EPA may then either accept the holder's petition by denying the applicant's registration or deny the holder's petition, a final agency (EPA) action, by issuing the applicant's registration. Id. Pursuant to FIFRA §§ 16(a) and (c), such final agency actions are reviewable by a district court. 7 U.S.C. §§ 136n(a) & 136n(c).

B.[3]

Plaintiff Syngenta is a manufacturer and distributor of pesticides. In 1976, Syngenta's predecessor[4] registered the pesticide metolachlor with EPA. Metolachlor is a grass herbicide used to control broadleaf and annual grassy weeds in various crops, trees, and turf. To develop, register, and maintain registration for metolachlor, Syngenta conducted numerous studies at a cost of millions of dollars.

In 1996, Syngenta submitted an application to EPA for registration of a new pesticide, S-metolachlor. S-metolachlor and metolachlor are chemically similar, and are designed for the same types of application and use. However, each has a different active ingredient, and, according to Syngenta, a lower application quantity of S-metolachlor can provide the same pesticidal efficacy as a higher quantity of metolachlor. In addition, Syngenta alleges that S-metolachlor, as compared to metolachlor, poses less toxicity to the environment without sacrificing efficacy, and is therefore considered a "reduced risk" pesticide.

The application for S-metolachlor was submitted under the "reduced risk pesticide" procedures and therefore given an expedited review. See FIFRA § 3(c)(10)(B), 7 U.S.C. § 136a(c)(10)(B). Because of the expedited review process,

---

[3] The facts will be set out in the light most favorable to the non-moving party, Syngenta. See Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).

[4] Syngenta is the successor-in-interest to Novartis Crop Protection, Inc. and to Ciba-Geigy Crop Protection, Inc. This Memorandum Opinion refers to this group's collective interest as "Syngenta."

6

EPA did not conclude its review of the data submitted in support of S-metolachlor before issuing Syngenta a registration.  S-metolachlor had a new active ingredient, and was therefore issued a conditional registration under FIFRA § 3(c)(7)(C).

Upon further review of the data submitted in support of S-metolachlor, EPA determined that certain data requirements were unfulfilled, and set deadlines for submission of such data.  In response, on December 20, 1999, Syngenta submitted three ecotoxicity studies:  (1) the Avian Reproductive Study of the Bobwhite Quail, (2) the Acute Myside Shrimp Study, and (3) the Fathead Minnow Life-Cycle and Early Life Stage Study.

When EPA granted Syngenta's registration of S-metolachlor it requested that Syngenta voluntarily cancel its metolachlor registrations in order to motivate consumers to use the new, less harmful pesticide.[5]  Syngenta complied with the request and ceased the manufacture and sale of metolachlor by September 1999. On December 27, 1999, EPA publicly announced the proposed cancellation of all metolachlor registrations and stated that the cancellation would be effective June 26, 2000.  Syngenta then ceased paying the registration fees for its metolachlor registrations.  Despite EPA's general practice of cancelling registrations when the appropriate fees were not paid, EPA did not respond by immediately cancelling

---

[5] Syngenta's Complaint states, "EPA . . . conditioned Syngenta's registration of S-metolachlor upon the phasing out of metolachlor."  In contrast, EPA claims that "Syngenta submitted a request to voluntarily cancel its metolachlor registration." (**EPA Mot. for JOP 4.)**

7

Syngenta's metolachlor registration.[6]

After publication of the proposed cancellation of the metolachlor registration, EPA received several applications from other companies for me-too conditional registrations based on the active registration of metolachlor. Specifically, on January 19, 2000, Cedar Chemical Co. ("Cedar")[7] applied to EPA for a me-too registration of a metolachlor product using the cite-all method of data submission. On March 2, 2000, Syngenta filed a petition with EPA to deny Cedar's application.

On October 12, 2000, Defendant Sipcam notified Syngenta that it was seeking a me-too registration of a metolachlor product using the selective method of data submission. On November 20, 2000, Syngenta filed a petition to deny the Sipcam application.

On or about April 11, 2001, Cedar filed revised applications for one technical and two end use metolachlor me-too registrations.[8] This second set of Cedar applications was based on lower metolachlor application rates than was Cedar's first application. On July 2, 2001, Syngenta filed a petition to deny the

---

[6] EPA did not cancel Syngenta's metolachlor registration until August 12, 2002, several months after Syngenta had filed the initial Complaint in this case.

[7] Cedar was previously named as a defendant in this case, however, because Cedar transferred all of its interests in its metolachlor registration and applications to MANA, MANA was substituted for Cedar as a defendant in this action in Syngenta's Amended Complaint [Doc. #129].

[8] These end use products are derived from the metolachlor registrations which are at issue in this case.

second set of applications by Cedar.[9]

On September 13, 2001, Defendant Drexel sought to obtain a registration for a new source of metolachlor using the cite-all method of data submission. This Drexel application also adopted the lower application rates that had been proposed in the second set of Cedar applications. On December 18, 2001, Syngenta filed a petition to deny Drexel's application.

II.

A.

On March 6, 2002, Syngenta filed a complaint in this Court requesting, among other things, a temporary restraining order and a preliminary injunction against EPA.[10] On March 8, 2002, a temporary restraining order was issued for ten days or until the Court dissolved the order. Hearings on the preliminary injunction were held on March 8 and from March 11 through March 13, 2002. On April 11, 2002,[11] the motion for the preliminary injunction was denied and the temporary restraining order was dissolved. On April 29, 2002, Syngenta filed

---

[9] Defendant MANA contends that Syngenta's petition to deny the applications only addresses its technical registration for metolachlor and not the two end use registrations. See infra Part IX.

[10] Case No. 1:02CV171.

[11] The Memorandum Opinion was originally filed on March 15, 2002, but was amended on April 11, 2002.

9

Notice of Voluntary Dismissal without Prejudice, the case was closed. Syngenta then filed the case now before the Court.

During the resolution of Syngenta's first complaint, EPA took action on the pending applications for me-too registrations. Despite having assured Syngenta that it would issue a decision regarding the cancellation of Syngenta's metolachlor registration no later than it issued a decision on Cedar's applications, EPA granted Cedar's second set of applications on March 21, 2002, before having issued any decision regarding cancellation of Syngenta's metolachlor registration. Subsequently, EPA also granted the Sipcam and Drexel applications.

B.

On April 29, 2002, after dismissing its first action, Syngenta initiated the case at hand by filing a Complaint against EPA, the Administrator of EPA, Cedar, Sipcam, Drexel, and TRI.[12] On July 12, 2004, this Court granted Syngenta's Updated Motion for leave to Amend and Supplement its Complaint [Doc. #127]. On July, 16, 2004, Syngenta filed its Amended and Supplemental Complaint ("Amended Complaint") [Doc. #129].

The new facts[13] alleged in Syngenta's Amended Complaint primarily relate to

_____

[12] TRI was named because Cedar had transferred its metolachlor registrations to TRI. However, these registrations were subsequently transferred from TRI and Syngenta's motion to dismiss all claims against TRI [Doc. #80] was granted in a July 12, 2004 Order [Doc. #127].

[13] These facts pertain to events that occurred after Syngenta filed its Complaint in this case on April 29, 2002.

10

the cancellation of Syngenta's metolachlor registration, transfers of the registration originally issued to Cedar, and additional applications for and registrations of metolachlor. A summary of these facts in Syngenta's favor is as follows.

On May 16, 2002, EPA sent Syngenta a memorandum dated March 21, 2002 that explained its reasons for issuing metolachlor registrations to Cedar, Sipcam, and Drexel. Then, on August 12, 2002, EPA cancelled Syngenta's metolachlor registration.

In August 2002, EPA approved the transfer of TRI's metolachlor registrations (which originally had been obtained from Cedar) back to Cedar. Then, in February 2003, EPA approved the transfer of these registrations and Cedar's pending metolachlor applications to MANA. As a result the Amended Complaint substitutes MANA for Cedar as a defendant to this action.

After filing its original Complaint, Syngenta became aware that Defendants Drexel and Sipcam had applied for additional metolachlor registrations. In addition, Albaugh, Inc. ("Albaugh"), another pesticide manufacturer, applied to EPA for metolachlor registrations. Syngenta filed petitions with EPA to deny the applications of Drexel, Sipcam, and Albaugh on December 6, 2002, January 31, 2003, and February 27, 2003, respectively. Thus, the Amended Complaint also added Albaugh as a defendant to this action.

On December 5, 2002, May 5, 2003, October 7, 2003, October 31, 2003, and February 5, 2004 EPA issued metolachlor registrations to Drexel. On March

11

19, 2003, in October 2003, and on March 23, 2004, EPA issued metolachlor

registrations to Sipcam.  On October 10, 2003 and February 24, 2004, EPA issued

metolachlor registrations to Albaugh.

Syngenta's Amended Complaint includes seven counts: (1) Count I–Violation

of FIFRA Exclusive Use Protections; (2) Count II–Arbitrary and Capricious Agency

Action in Violation of the APA; (3) Count III– EPA Action Depriving Syngenta of

Due Process of Law; (4) Count IV– EPA Action in Violation of the Equal Protection

Clause; (5) Count V–Mandamus Directed to EPA to Enforce the Law; (6) Count

VI–Declaratory Judgment; and (7) Count VII–Equitable Estoppel.[14]

On August, 13, 2004, EPA filed an Answer to the Amended Complaint [Doc.

#145] and on September 24, 2004 filed a Motion for Partial Judgment on the

Pleadings, requesting dismissal of Counts III through VII, pursuant to Federal Rule

of Civil Procedure 12(c) [Doc. #153].[15]  On August 9, 2004, Sipcam filed an

Answer to the Amended Complaint [Doc. #141] and a Motion to Dismiss Counts III

and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #141].[16]  On

_____

[14] These counts are identical to the seven counts alleged in the original
complaint filed by Syngenta.

[15] EPA filed a Motion for Partial Dismissal of Complaint [Doc. #48] on July 8,
2002.  This motion was still pending when the Amended Complaint was filed.
Thus, EPA's Motion for Partial Judgment on the Pleadings replaces this previous
Motion to Dismiss which is therefore MOOT.

[16] Sipcam also filed a Motion to Dismiss [Doc. #52] prior to the filing of the
Amended Complaint.  That motion is replaced by the subsequent Motion to Dismiss
and is therefore MOOT.

August 2, 2004, Drexel filed an Answer to the Amended Complaint [Doc. #136], and later joined EPA's motion for partial judgment on the pleadings and Sipcam's motion to dismiss [Doc. #149].  Defendants MANA and Albaugh filed Answers to the Amended Complaint on August 10, 2004 [Doc. #143] and August 30, 2004 [Doc. #150] respectively.  On December 10, 2004, MANA filed a Motion to Dismiss all Claims pursuant to Federal Rule of Civil Procedure 12(b)(1) [Doc. #169].  These motions will now be considered.

III.

Defendant EPA has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c) and Defendants Sipcam and MANA have moved for dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6) & 12(c).  Rule 12(c) provides that judgment on the pleadings is warranted when no genuine issues of material fact exist.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint.  Davenport v. Davenport, 146 F. Supp. 2d 770, 783 (M.D.N.C. 2001).  Where the defendant raises the defense of failure to state a claim upon which relief can be granted, as Defendant EPA has, the same standard is applied to a Rule 12(c) motion as for a Rule 12(b)(6) motion to dismiss.  Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-406 (4th Cir. 2002).  Thus, under both 12(c) and 12(b)(6),

13

dismissal is appropriate only where it is clear, taking the nonmoving party's allegations as true, that the non-moving party can prove no set of facts sufficient to support its claims for relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984);  Davenport, 146 F. Supp. 2d at 783.

IV.

Defendants contend that Syngenta's due process claims should be dismissed for failure to state a claim upon which relief can be granted.  Count III of Syngenta's Amended Complaint alleges a violation of its procedural and substantive due process rights under the Fifth Amendment to the United States Constitution.[17]  (Am. Compl. ¶¶ 180-86.)  Specifically, Syngenta identifies a "constitutionally protected interest in EPA's compliance with the procedures and substantive requirements of FIFRA" as well as a "constitutionally protected interest in its exclusive use data."  (Am. Compl. ¶¶ 181-82.)  The sufficiency of Syngenta's procedural and substantive due process claims will be addressed in turn.

A.

A procedural due process claim is properly stated where the complaint alleges: (1) the plaintiff has a property interest; (2) the government has deprived

_____

[17] The Fifth Amendment prevents the government from depriving any person of life, liberty, or property without due process of law.  U.S. Const. amend. V.

14

plaintiff of that interest; and (3) that deprivation was effectuated without due process of law.  See Tri County Paving, Inc. v. Ashe County, 281 F.3d 430, 436 (4th Cir. 2002).

Syngenta asserts a "constitutionally protected interest in its exclusive use data" which constitutes a property interest sufficient to satisfy the first element.[18] It is well-established that "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."  Board of Regents of State Colls. v. Roth, 408 U.S. 564, 571-72, 92 S. Ct. 2701 (1972). "To have a property interest in a benefit, a person must have a 'legitimate claim of entitlement to it.'" Tri County Paving, 281 F.3d at 436 (citing Roth, 408 U.S. at 577).  FIFRA § 3(c)(1)(F)(i) protects a registrant's exclusive use data from use by others for a period of ten years.  7 U.S.C. § 136a(c)(1)(F)(i).  Syngenta alleges ownership in exclusive use data that was submitted in support of its S-metolachlor registrations.  Defendants do not dispute that an interest in exclusive use data would constitute a property interest.  Rather, Defendants[19] argue that the data in

_____

[18] Although the Amended Complaint also alleges a "constitutionally protected interest in EPA's compliance with the procedures and substantive requirements of FIFRA" (Am. Compl. ¶ 181), Syngenta makes no further contention regarding this interest, nor is there any apparent support for this claim. Therefore this claim will not be considered.

[19] This argument is advanced by Sipcam in its Motion to Dismiss Syngenta's Third and Fourth Claims for Relief [Doc. #141].  EPA also moves to dismiss this claim, but relies almost exclusively on the "last resort" doctrine which prohibits a court from deciding constitutional grounds if the case can be decided on non-constitutional grounds.  (See EPA Mot. for JOP 9.)  However, dismissing

15

question are not "exclusive use data" but are "defense data" under FIFRA.

Pursuant to 40 C.F.R. § 153.83(c), Syngenta's studies would qualify as "exclusive use data" in the following circumstances:

> (c) "Exclusive use study" means a study that meets each of the following requirements:
>
>> (1) The study pertains to a new active ingredient (new chemical) or new combination of active ingredients (new combination) first registered after September 30, 1978;
>>
>> (2) The study was submitted in support of, or as a condition of approval of, the application resulting in the first registration of a product containing such new chemical or new combination (first registration), or an application to amend such registration to add a new use; and
>>
>> (3) The study was not submitted to satisfy a data requirement imposed under FIFRA section 3(c)(2)(B).[20]

40 C.F.R. § 152.83(c).

Syngenta alleges that on March 14, 1997, EPA issued a conditional registration for S-metolachlor as a new active ingredient under FIFRA § 3(c)(7)(A) and that upon further review of the data package submitted for the S-metolachlor

---

Syngenta's constitutional claims based on the "last resort" doctrine at the motion to dismiss stage, when the other grounds asserted are not yet before the Court, is premature.

[20] FIFRA § 3(c)(2)(B) provides in pertinent part: "(i) If the Administrator determines that additional data are required to maintain in effect an existing registration of a pesticide, the Administrator shall notify all existing registrants of the pesticide to which the determination relates and provide a list of such registrants to any interested person. 7 U.S.C. § 136a(c)(2)(B). Defendants contend that data submitted under this provision would be considered "defensive data" and not "exclusive use data". (Sipcam Mot. to Dismiss 10-11.)

application, EPA determined that certain data requirements were unfulfilled.  (Am.

Compl. ¶ 49, 51.)  EPA then set deadlines for the submission of the required data

as a condition of the registration of S-metolachlor.[21]  (Id. ¶ 51.)  The studies at

issue were submitted by Syngenta in response to these conditions.  Given the

sequence of events put forth in the Amended Complaint, Syngenta has alleged

facts, if true, sufficient to show that at least some of the studies were exclusive

use data.[22]  Thus, Syngenta has successfully alleged a property interest.

Syngenta next alleges that it was deprived of that property interest when

EPA issued registrations to the metolachlor applicants, Cedar, Sipcam, Drexel, and

Albaugh, in reliance on Syngenta's exclusive use data without Syngenta's consent.

(Am. Compl. ¶¶ 124, 184.)  Although Defendants contest the veracity of this

claim, Syngenta has alleged facts which taken as true, are sufficient to state a

claim for a deprivation of its property interest in the "exclusive use data."

Finally, Syngenta must meet the third requirement, that the alleged

---

[21] Syngenta also alleges that EPA lifted the previously imposed expiration date for Syngenta's conditional S-metolachlor registration and conditioned it on the submission of the necessary data.  (Am. Compl. ¶ 51.)

[22] Syngenta alleges that the following studies were submitted to EPA in support of its S-metolachlor registration: (1) an avian reproduction toxicity study in the bobwhite quail; (2) an early life stage chronic toxicity study in fathead minnows; (3) a life-cycle chronic toxicity study in mysid shrimp; (4) a small scale prospective groundwater study with a terrestrial field dissipation component; and (5) a turf field dissipation study.  (Pl.'s Res. to Sipcam's Mot. to Dismiss 4-5.)  It is not clear whether Syngenta contends all or only some of these studies were relied on by Defendants in their me-too applications and EPA's subsequent metolachlor registrations.

deprivation of its property interest was effectuated without due process of law. See Tri County Paving, 281 F.3d at 436. Generally due process requires that a deprivation of property be preceded by notice and opportunity for hearing. Id. However, "to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." Id. (internal citations omitted).

Title 40 C.F.R. § 152.116 provides that notice be given to the original submitter of exclusive use studies at least 30 days before the agency issues a registration that relies on exclusive use data. 40 C.F.R. § 152.116. Once notice is given, the original data submitter is given the opportunity to challenge the EPA's registration of an application before it is issued. See 40 C.F.R. § 151.116(b). Syngenta contends that EPA's failure to give advanced notice of the new metolachlor registrants' applications denied it the opportunity to challenge the regulations before they were issued. However, Syngenta's own Amended Complaint makes it clear that although the required notice may not have been given by EPA, Syngenta certainly had an opportunity to file challenges to the applications. In fact, Syngenta submitted the following petitions to EPA challenging registrations for metolachlor and metolachlor end use products:

> (1) a Petition to Deny Cedar's first metolachlor registration applications on March 2, 2000;
>
> (2) a Petition to Deny Sipcam's technical metolachlor registration application on November 20, 2000;

18

(3) a Petition to Deny Cedar's second metolachlor registration applications on July 2, 2001;

(4) a Petition to Deny Drexel's technical metolachlor registration applications on December 18, 2001;

(5) a Petition to Deny Drexel's end use metolachlor registration applications on December 6, 2002;

(6) a Petition to Deny Sipcam's end use metolachlor registration applications on January 31, 2003; and

(7) a Petition to Deny Albaugh's metolachlor registration applications on February 27, 2003.

(Am. Compl. ¶ 126.)

Additionally, on May 16, 2002, Syngenta was provided with a letter from EPA in response to its petitions explaining EPA's decision to issue metolachlor registrations. (Am. Compl. ¶136.) Although Syngenta may disagree with EPA's decision, that does not give rise to a separate cause of action for alleged constitutionally improper procedure. See Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 827 (4th Cir. 1995) (dismissing procedural due process claim when plaintiff's claim was basically that the Board's decision was mistaken and lacked the support of evidence); Hyatt v. Town of Lake Lure, 314 F. Supp. 2d 562, 579 (W.D.N.C. 2003) ("[P]rocedural due process does not require certain results – it requires only fair and adequate procedural protections."). The list of petitions above leaves little doubt that not only was Syngenta aware of the applications, it also had a number of opportunities, of which it took advantage, to object to the issuance of the metolachlor registrations. Thus, although notice of the metolachlor

19

applications was not received directly from EPA, Syngenta appears to have had ample opportunity to be heard on the issue.  See Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005) (holding that plaintiffs' claim that the hearing  was unfair was insufficient to state a procedural due process claim when they received other review where they were permitted to present their side of the controversy).  Syngenta not having alleged facts sufficient to support a finding that it has been deprived of a right to be heard, has not stated a procedural due process claim.

B.

Syngenta also contends that Defendants violated its substantive due process rights.  To state a substantive due process claim, a plaintiff must allege:  (1) that it had property or a property interest; (2) the government deprived it of that property interest; and (3) the government's actions fall so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.  See Sylvia Dev. Corp., 48 F.3d at 827.  The contours of substantive due process, however, are narrower than procedural due process because substantive due process concerns governmental action which is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation . . . remedies."  Id. (citations omitted); see also Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995)

20

("Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them.") (citations omitted).  Thus, a substantive due process claim is warranted only where *no process* could cure the deficiencies in the governmental action.  Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 288 (4th Cir. 1998).

Syngenta claims that "EPA's deliberate decision to appropriate Syngenta's exclusive use data for the benefit of other registrants was an egregious abuse of governmental power and no amount of process can fully cure EPA's action." (Pl.'s Opp'n 14.)  This claim, however, merely restates Syngenta's claims of improper agency action utilizing constitutional due process terminology.  A similar claim, however, was rejected in Sylvia Development Corp., 48 F.3d at 829 n.7.  In that case, the Fourth Circuit explained:

> [T]o conclude that every agency decision reversed as 'arbitrary and capricious' under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine.  As the courts have consistently recognized, the inquiry into 'arbitrariness' under the Due Process Clause is completely distinct from and far narrower than the inquiry into 'arbitrariness' under state or federal administrative law.  While administrative law focuses on whether an agency's decision was supported by record evidence and abided by statutory criteria, substantive due process inquires into the conceivable outer limits of legitimate government power.

Id. (internal citations omitted).  Here, Syngenta has failed to allege any activity by EPA that would implicate the "outer limits of legitimate government power." Id.

Additionally, Syngenta has failed to allege facts sufficient to suggest that

the EPA's actions were "so arbitrary and irrational" that they are incapable of remedy. Process capable of curing any deficiencies in the EPA's actions is available within the procedures afforded by FIFRA, the APA, and this Court. See id. at 829 ("[T]he fact that established . . . procedures were available to address and correct illegal actions by the Board belies the existence of a substantive due process claim."); c.f. Front Royal, 135 F.2d at 288 (holding where a court is capable of providing a remedy for defendant's action, dismissal of substantive due process claim is warranted). In fact, Syngenta is seeking remedies for EPA's actions as part of this law suit. Because Syngenta has failed to set forth facts sufficient to give rise to a claim for a violation of substantive due process, this claim will also be dismissed.

V.

Defendants also contend that Syngenta's equal protection claim should be dismissed pursuant to Rule 12(c) and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6) & (c). Syngenta contends that EPA violated its right to equal protection under the Fifth Amendment[23] by refusing to cancel its metolachlor registration for failure to pay annual registration

_____

[23] The Supreme Court has recognized the doctrine of equal protection of the laws in the due process clause of the Fifth Amendment even though it does not actually contain an equal protection clause, as does the Fourteenth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 498-99, 74 S. Ct. 693 (1954).

22

maintenance fees, while, cancelling other registrations where registrants had failed
to pay the same fees.  (Am. Compl. ¶¶ 187-190; Pl.'s Opp'n 4.)

The Supreme Court has recognized the ability of a 'class of one' to bring an
equal protection claim.  Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120
S. Ct. 1073 (2000); see also Tri County Paving, 281 F.3d at 439.  In this case,
Syngenta alleges that EPA unequally applied facially neutral legislation, specifically
FIFRA.[24]  To succeed on this type of equal protection claim, Syngenta must allege
two things:  (1) that it has been treated differently than other with whom it is
similarly situated, and (2) that the unequal treatment was the result of intentional
or purposeful discrimination.  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.
2001).

A.

To establish the first element of an equal protection claim, the plaintiff must
allege not only that it was treated differently than other entities, but also that
those entities were similarly situated to the plaintiff.  See Houck & Sons, Inc. v.
Transylvania County, 852 F. Supp. 442, 452 (W.D.N.C. 1993) (citing E & T Realty
v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987)).  When a court determines

---

[24] There are three broad categories of due process claims:  (1) a claim that a
statute discriminates on its face; (2) a claim that the neutral application of a facially
neutral statute has a disparate impact; and (3) a claim that a defendant is unequally
administering a facially neutral statute.  See E & T Realty v. Strickland, 830 F.2d
1107, 1112 n.5 (11th Cir. 1987).  Syngenta's claim falls within the third category.

23

whether persons are similarly situated for equal protection purposes, it must examine all relevant factors.  United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996) (citing, Attorney General of the United States v. Irish People, Inc., 684 F.2d 928, 946 (D.C. Cir. 1982) ("Discrimination cannot exist in a vacuum, it can be found only in the unequal treatment of people in similar circumstances.") cert. denied, 459 U.S. 1172, 103 S. Ct. 817 (1983)).

Syngenta alleges that it was similarly situated to all other parties who failed to pay their registration maintenance fees to EPA in the years 2000, 2001, and 2002.  (Pl.'s Opp'n 5.)  Syngenta alleges that over the three years "hundreds or thousands of registrants" failed to pay their maintenance fees,[25] and Syngenta is "unaware of any other situation in which EPA refused to cancel a registration for failure to pay an annual registration maintenance fee, much less for failure to pay over three years."  (Id.)  EPA, however, contends that Syngenta's identification of "similarly situated" parties is overbroad because it fails to "identify even one other pesticide manufacturer whose request to voluntarily cancel a pesticide registration was granted when there were comments and pending 'me-too' applications based on the registration to be cancelled."  (EPA Mot. for JOP 12.)

Here, Syngenta claims that it has no knowledge of whether any of the registrations that were cancelled for non-payment of fees involved circumstances

---

[25] Specifically, Syngenta alleges that in 2000, EPA cancelled 984 registrations for unpaid fees, and in 2001, EPA cancelled 906 registrations for unpaid fees. (Pl.'s Opp'n 5.)

24

similar to Syngenta's.  Although such evidence would be required for Syngenta to maintain its claim after discovery, either at summary judgment or trial, Syngenta can not be required to provide evidence to satisfy this narrow definition of "similarly situated" parties at this stage in the proceedings.  C.f. <u>Willis v. Town of Marshall, N.C.</u>, 426 F.3d 251, 263-64 (4th Cir. 2005) (refusing to grant summary judgment when the information regarding whether others were similarly situated was "wholly within the knowledge" of the other party and discovery had not yet been commenced) (citing <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 246-47 (4th Cir. 2002) ("Generally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.") (internal quotations and alterations omitted)).

B.

The second element of the equal protection claims requires Syngenta to allege facts sufficient to show that any unequal treatment by EPA was done intentionally or purposefully to discriminate against Syngenta.  <u>See</u> <u>Morrison</u>, 239 F.3d at 654.  Syngenta contends that EPA failed to cancel its registrations "solely for the purpose of justifying the improper use of a lower, conditional registration standard to illegally register metolachlor to other applicants who would then seek to flood the market and environment with it."  (Am. Compl. ¶ 86; Pl.'s Opp'n 7.) Although equal protection claims "must be alleged with sufficient specificity to avoid being conclusory . . . there is no heightened pleading requirement imposed

25

on the plaintiff." Hyatt, 225 F. Supp. 2d at 660 (citations omitted). Thus, although any rational basis put forth by EPA for its actions would defeat Syngenta's equal protection claim at a later stage in the case, the allegations contained in Syngenta's Amended Complaint are sufficient to state a claim that EPA's actions were intended to discriminate against Syngenta in violation of the equal protection clause. See id. (finding general allegations by plaintiff that she was treated differently from others similarly situated and that defendants acted arbitrarily and capriciously and with personal malice toward her were sufficient to meet the standards of Rule 12(b)(6)); see also Olech, 528 U.S. at 565 (holding that allegation in complaint that defendant actions were "irrational and wholly arbitrary" were sufficient, quite apart from the defendant's subjective motivations, to state a claim for relief under traditional equal protection analysis); Zahra v. Town of Southold, 48 F.3d 674, 684 n.5 (2d Cir. 1995) (holding the following allegation was sufficient to state an equal protection claim: "The acts of all individual defendants as alleged herein were made intentionally or in reckless disregard of [plaintiff]'s rights, were made in bad faith and constitute a pattern of discrimination against [plaintiff]"); c.f. Yates v. Beck, 2003 WL 22231260, at *7 (W.D.N.C. Aug. 22, 2003) (noting that plaintiff's equal protection claim could be defeated by any rational explanation for defendant's conduct, but holding that because the complaint does not suggest a rational basis for the conduct, "the facts alleged by Plaintiff suffice, if barely, to state a claim under the Equal Protection Clause").

26

EPA also moves for judgment on the pleadings regarding Syngenta's claim that mandamus be entered against the EPA pursuant to Rule 12(c). Syngenta seeks a writ of mandamus directing the EPA to (1) provide advance notice to Syngenta of and explanation of any registrations such as those at issue here, (2) deny any registration application that relies upon exclusive use data, and (3) deny pesticide registrations that do not meet the environmental and health standards set forth in FIFRA. (Am. Compl. ¶ 192.)

Title 28 U.S.C. § 1361 provides for an "action in the nature of mandamus" in certain limited situations. 28 U.S.C. § 1361. Specifically, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Id. However, the Fourth Circuit has recognized that a writ of mandamus is not an absolute right and "is not favored except in extraordinary situations." First Fed. Sav. & Loan Ass'n. v. Baker, 860 F.2d 135, 138 (4th Cir. 1988) (citations omitted). Syngenta has the burden of demonstrating that its right to the issuance of mandamus is "clear and indisputable." Id. To invoke a petition for writ of mandamus, three elements must co-exist: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act request by the petitioner; and (3) no other adequate remedy is available." Id.; see also Estate of Michael ex rel. Michael v. Lullo, 173 F.3d 503,

512-13 (4th Cir. 1999). Additionally, "[m]andamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." Id. at 138.

EPA does not argue that Syngenta does not have a clear right to the requested relief, (see EPA's Mot. for JOP 14 n.13) (acknowledging that for purpose of a motion to dismiss the Court must accept all factual allegations as true), rather EPA contends that there is no "clear duty" to perform the acts for which Syngenta seeks mandamus. Whether Syngenta has met its burden as to each of its claims for mandamus by alleging a non-discretionary duty that is clear and indisputable is addressed in turn below.

A.

Syngenta first claims that EPA has a duty to provide advance notice and explanation of any new registrations which rely on exclusive use data. Syngenta relies on 40 C.F.R. § 152.116 to support its claim that the duty of the EPA to take this action is mandatory. Under § 152.116, the EPA is required to provide the original submitter of an exclusive use study at least 30 days advance notice before registration of a product containing an active ingredient for which the previously submitted study is eligible for exclusive use. 40 C.F.R. § 152.116(a). Syngenta argues that the language of this regulation is a mandatory "will notify," not a permissive "may notify," signaling the lack of discretion of the EPA. EPA responds, however, that this duty is triggered only in situations where the data is

28

eligible for exclusive use protections, which it claims is not the case here.

However, when considering a motion for judgment on the pleadings or a motion to

dismiss, all of the plaintiff's factual allegations must be taken as true. As

discussed above, see supra Part IV(A), Syngenta has alleged that its data is eligible

for exclusive use protections and this triggers the notice provisions contained in §

152.116.

Syngenta, however, does not ask the Court to enter mandamus requiring

notice to be given pursuant to § 152.116. Rather Syngenta requests the Court to

mandate that EPA "cancel the registrations so that any future registration decisions

can be made in harmony with the notice requirement." (Pl.'s Opp'n 18.) The

second element necessary for a mandamus requires that "the respondent has a

clear duty to do the *particular act* request by the petitioner." First Fed. Sav. &

Loan Ass'n., 860 F.2d at 138. Syngenta has failed to show any mandatory or

ministerial obligation on EPA to take such an action. While it may be reasonable to

mandate that notice be given in the future by EPA pursuant to § 152.116,

Syngenta fails to allege that any provision of FIFRA requires the EPA to cancel

approved registrations if notice is not given properly. Because the writ of

mandamus requested by Syngenta does not relate to the particular act that EPA

has a duty to perform, judgment on the pleadings dismissing this claim is

appropriate.

29

Syngenta also contends that EPA has a clear duty to deny all pesticide applications that do not meet FIFRA's environmental and health registration standards, including the me-too registrations for metolachlor at issue in this case. Syngenta alleges that the metolachlor registrations granted by the EPA will "significantly increase the risk of unreasonable adverse effects on the environment due to the additional volume of active ingredient that will enter the environment through the use of metolachlor rather than S-metolachlor." (Pl.'s Opp'n 17.) To support this claim, Syngenta relies on the conditional registration provision of FIFRA § 3(c)(7)(A), which states: "The Administrator may conditionally register or amend the registration of a pesticide if the Administrator determines that . . . (ii) approving the registration or amendment in the manner proposed by the applicant would not significantly increase the risk of any unreasonable adverse effect on the environment." 7 U.S.C. § 136a(c)(7)(A).

However, even if Syngenta's claims of the environmental and health effects of metolachlor are accepted as true, mandamus is not proper unless EPA has a clear duty to deny all pesticide applications that do not meet FIFRA's registration standards. Each of the FIFRA provisions at issue contain a permissive "may" suggesting that the action is within the discretion of EPA. See 7 U.S.C. §136a(c)(7)(A) ("The Administrator *may* conditionally register or amend registration . . . "); 7 U.S.C. 136a(c)(6) ("[T]he Administrator *may* refuse to register the

pesticide."); see also Jama v. Immigration and Customs Enforcement, 543 U.S.

335, 346, 125 S. Ct. 694 (2005) ("The word 'may' customarily connotes

discretion.  That connotation is particularly appropriate where, as here, 'may' is

used on contraposition to the word 'shall'");  Intermodal Techn., Inc. v. Mineta,

2006 WL 288074, at *6 (E.D. Mich. Feb. 7, 2006) ("Certainly, the defendants are

correct that generally the use of the word 'may' means that an act is discretionary

and therefore beyond the relief intended by the mandamus statute.").  Because the

decision of the EPA whether to register metolachlor given its effects on the

environment is discretionary, mandamus is not warranted.

C.

Finally, Syngenta contends that EPA has a duty to deny pesticide

applications that rely on exclusive use data.  Syngenta relies on 40 C.F.R. §

152.99(c)(3) which provides, "if the Agency determines that an applicant for

registration of a product has acted in any way that deprives an original data

submitter of rights under FIFRA section 3(c)(1)(D),[26] the Agency will take steps to

deny the application or cancel the registration, as appropriate."  40 C.F.R. §

152.99(c)(3).  Although this provision of FIFRA does not utilize the word "shall," it

does appear to impose a mandatory duty on EPA.  Specifically, it states that if the

---

[26] Although 40 C.F.R. § 152.99(c)(3) refers to FIFRA section 3(c)(1)(D), the provisions of section 3(c)(1)(D) do not appear to be relevant to the discussion in § 152.99(c)(3).  See 7 U.S.C. § 136a(c)(1)(D).  However, the relevant language explaining the rights of the original data submitter is found directly below it in FIFRA section 3(c)(1)(F).  See 7 U.S.C. § 136a(c)(1)(F).

31

necessary circumstances arise, EPA "will take steps" to prevent the deprivation of the rights of the exclusive use data owner. Id. EPA's reliance on § 152.116(c), which provides that EPA may grant an application that relies on exclusive use data if the data owner has provided written permission to the applicant, does not change the mandatory nature of this provision. 40 C.F.R. § 152.116(c). Rather, it suggests that without such permission, the EPA is not authorized to grant applications that rely on such data. Thus, Syngenta has met the necessary burden of alleging a non-discretionary duty: it is clear and indisputable that EPA must deny any registration application that relies upon exclusive use data.[27]

A mandamus ordering EPA to deny any registration application that relies upon exclusive use data, however, is only proper if Syngenta has no other adequate remedy for the relief sought. See First Fed. Sav. & Loan Ass'n., 860 F.2d at 138. Adequate remedies include the availability of both administrative and judicial remedies. See McDaniels v. Heckler, 571 F. Supp. 880, 883 (D. Md. 1983); Holmes v. U.S. Bd. of Parole, 541 F.2d 1243, 1247 (7th Cir. 1976), overruled on other grounds 586 F.3d 37, 45 (7th Cir. 1978) (citing U.S. ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 544, 57 S. Ct. 855 (1937) (refusing to depart from the "settled rule that the writ of mandamus may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a

_____

[27] With the exception, of course, of those situations where the applicant has received the written permission of the data owner, which is not at issue in this case.

32

remedy equally adequate, and complete")).  The alternative remedies, however, "must be capable of affording full relief as to the very subject matter in question." Holmes, 541 F.2d at 1247.

Here, Syngenta is not without other adequate remedies.  In fact, the remaining mandamus claim – that EPA to deny pesticide applications that rely on exclusive use data – seeks the same remedy as several of Syngenta's other claims in this very case.  Syngenta's claims under FIFRA and the APA request the Defendants' me-too metolachlor registrations be cancelled and the EPA's decision be remanded for a proper evaluation in accordance with FIFRA and its regulations.  According to Syngenta, proper application of FIFRA will result in the denial of all applications that rely on exclusive use data, including all of the applications for metolachlor and end use products filed by the Defendants in this case.

Additionally, FIFRA § 16(c) provides district courts of the United States with jurisdiction to "enforce, and to prevent and restrain violations" of FIFRA.  7 U.S.C.A. § 136(n)(c).  Thus, judicial remedies are still available, and, in fact, are currently being sought by Syngenta.  The writ of mandamus requested would add nothing by way of remedy for Syngenta and therefore the "extraordinary situations" for which mandamus is reserved are not present in this case.  First Fed. Sav. & Loan Ass'n., 860 F.2d at 138.  EPA's motion for judgment on the pleadings will be granted as it relates to Syngenta's mandamus claims.

33

VII.

EPA next contends judgment on the pleadings should be entered on
Syngenta's declaratory judgment claim.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in a case
of actual controversy, district courts "may declare" the rights of interested parties.
28 U.S.C. § 2201(a).   However, the district court has discretionary authority to
hear declaratory judgment cases and in the Fourth Circuit should only do so in the
following circumstances:  (1) "when the judgment will serve a useful purpose in
clarifying and settling the legal relations in issue," and (2) "when it will terminate
and afford relief from uncertainty, insecurity, and controversy giving rise to the
proceeding."  United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir.
1998); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937).

Count VI of Syngenta's Amended Complaint requests a declaratory judgment
"enjoining EPA from acting contrary to the requirements of FIFRA, the APA and the
United States Constitution in regard to certain metolachlor applications and
registrations."  (Am. Compl. ¶ 199.)[28]  Specifically, Syngenta seeks declaratory
relief to clarify its rights and EPA's obligations under FIFRA, including "EPA's
treatment of exclusive use data, the scope of the EPA's discretion to cancel

---

[28] Although Syngenta's Amended Complaint requests that the Court "enjoin"
EPA, its brief in opposition makes it clear that it is requesting that the Court
"declare" the legality of the EPA's registrations of metolachlor and EPA's failure to
provide legally required advanced notice.  (Pl.'s Opp'n 8.)

pesticide registrations, and the health and environmental conditions for issuing new registrations." (Pl.'s Opp'n 8.) Syngenta claims this Court should exercise its authority to consider its declaratory judgment claim because a judgment in this case will clarify the proper procedures for handling not only future metolachlor registrations, but also other exclusive use applications and conditional registrations which would affect a large range of pesticide registrations.

EPA contends this "merely echoes other portions of the Amended Complaint and fails to state any kind of independent claim." (EPA Mot. for JOP 17.) However, as Syngenta contends, it is well-established that existence of another adequate remedy does not preclude judgment for declaratory relief in cases where it is appropriate. See Fed. R. Civ. P. 57; Anderson v. Aetna Life Ins. Co., 89 F.2d 345, 347 (4th Cir. 1937) ("We think that irrespective of whether the suit would have been cognizable in equity or whether plaintiff would have had an adequate remedy at law in defending actions at law instituted by the defendants, the remedy provided by the [declaratory judgment] statute was available to it."). Even where a district court has jurisdiction, however, whether a claim for declaratory judgment should be entertained or the plaintiff be left to his other remedy is "a matter within the sound discretion of the court." Western v. McGehee, 202 F. Supp. 287, 293-94 (D. Md. 1962). In this circumstance a district court should ask "whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not the other remedy is more effective

35

or efficient." Id. at 294 (citing Maryland Cas. Co. v. Boyle Constr. Co., 123 F.2d 558, 565 (4th Cir. 1941); 8 Wright, Miller & Kane, Federal Practice & Procedure, § 2758 (3d ed. 1998).

Here, Syngenta's claim for declaratory judgment rests on exactly the same grounds as several of its other claims. Additionally, there is nothing anticipatory about Syngenta's claims – EPA has already denied Syngenta's petitions and granted the registrations for metolachlor. Thus, issuance of a declaratory judgment will not settle anything more than will be accomplished by the resolution of Syngenta's other claims. See Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F. Supp. 2d 837, 847 (E.D. Mich. 2003) (dismissing claim for declaratory relief because it was redundant to the other relief sought by the plaintiff). For these reasons, the Court's discretion to hear Syngenta's declaratory judgment claim will not be exercised in this case.

VIII.

Finally, EPA moves for judgment on the pleadings of Syngenta's equitable estoppel claim for failure to state a claim for which relief can be granted. In Count VII of the Amended Complaint Syngenta alleges that it detrimentally relied on EPA's assertions that it would cancel Syngenta's metolachlor registrations by removing metolachlor from the market. (Am. Compl. ¶¶ 64, 202.)

To state a claim for equitable estoppel against the United States a plaintiff

36

must allege (1) affirmative conduct by an agent of the United States (3) upon which it reasonably relied (3) to its detriment.  See Heckler v. Cmty Health Servs., 467 U.S. 51, 60, 104 S. Ct. 2218, 2224 (1984).  The Supreme Court, however, has never sustained an equitable estoppel claim against the Government.  See id. ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined.  It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.").  However, the Supreme Court has reserved judgment on whether "affirmative misconduct" by the government could support such a claim.  Keener v. Eastern Assoc. Coal Corp., 954 F.2d 209, 214 n.6 (4th Cir. 1992).  The Fourth Circuit has also suggested that the government can not be equitably estopped without a showing of affirmative misconduct.  Id. (finding no affirmative misconduct when the government did not appear to be intentionally lying, and the conduct was not malicious); Maryland Dep't of Human Res. v. United States Dep't of Agric., 976 F.2d 1462, 1464 n.24 (4th Cir. 1992) (stating the Fourth Circuit would "decline[] to find equitable estoppel against the federal government absent a showing of affirmative misconduct").[29]

_____

[29] Syngenta's reliance on United States v. Cox, 964 F.2d 1431 (4th Cir. 1992) is misplaced.  Although in Cox a claim for equitable estoppel was granted without requiring a showing of affirmative misconduct, that court was careful to distinguish the case because it did not involve a private litigant against the government, but rather one government agency estopped for the benefit of

The Amended Complaint alleges that EPA "required Syngenta to phase out and cancel metolachlor" which Syngenta did and then EPA failed to acknowledge the cancellation of metolachlor in order to review and grant the other Defendants' metolachlor registration applications under the less stringent me-too statutory standard. (Am. Compl. ¶¶ 200-204.) These allegations, if true, clearly support detrimental reliance on the part of Syngenta and could support a finding of affirmative misconduct by EPA. See, e.g., Benson v. United States, 1997 WL 428687, at *2 (10th Cir. July 31, 1997) (suggesting that affirmative conduct exists where "the Government specifically encouraged a mistake of which it then took advantage."). Thus, at this stage in the proceedings, EPA's motion for judgment on the pleadings for failure to state a claim for equitable estoppel will be denied.

IX.

Defendant MANA also filed a separate Motion to Dismiss in this case. MANA moves to dismiss all of Syngenta's Claims (Counts I through VII) against its metolachlor end use products pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.[30] Specifically, MANA asserts

_____

another. Id. at 1435.

[30] As explained previously, MANA has acquired all of the interest in Cedar's metolachlor and end use registrations, and therefore has been substituted for Cedar as a defendant in this action.

38

that although Syngenta filed petitions to deny the applications of Cedar's

Metolachlor Technical and Metolachlor Technical II applications, no additional

petitions were filed regarding Cedar's end use applications.[31]  As a result, MANA

contends Syngenta failed to exhaust its administrative remedies – specifically,

petitioning for denial of the applications – with respect to Cedar's metolachlor end

use registrations.

## A.

When a Rule 12(b)(1) motion is raised as to the factual basis for subject

matter jurisdiction, the plaintiff bears the burden of proving jurisdiction exists.

<u>Richmond, Fredericksburg & Potomac R. Co. v. U.S.</u>, 945 F.2d 765, 786 (4th Cir.

1991).  Such challenges to the subject matter jurisdiction of the court may be

brought at any time.  <u>See</u> Fed. R. Civ. P. 12(b)(1) ("Whenever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the

subject matter, the court shall dismiss the action.").  When evaluating a challenge

to jurisdiction under Rule 12(b)(1) the court can go beyond the face of the

complaint and consider evidence without converting the proceeding to one for

summary judgment.  <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982); <u>see</u>

---

[31] MANA's end use applications were comprised of four applications: (1) application for Inter Plus filed on May 30, 2000; (2) application for Inter 8E filed on June 22, 2000; (3) application for Inter Plus II filed in May and June 2001; and (4) application for Inter 8E II filed in May and June 2001.  MANA's Inter Plus II, and Inter 8E III registrations were granted by EPA on March 21, 2002 along with its Metolachlor Technical II registration.  EPA has never granted registrations for MANA's Metolachlor Technical, Inter Plus and Inter 8E.

also Richmond, Fredricksburg & Potomac R. Co., 945 F.2d at 768.

B.

It is well-established that parties must exhaust prescribed administrative remedies before seeking relief from the federal courts.  See McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S. Ct. 1081 (1992); Guerra v. Scruggs, 942 F.2d 270, 276 (4th Cir. 1991).  "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  McCarthy, 503 U.S. at 145; see also Weinberger v. Salfi, 422 U.S. 749, 766, 95 S. Ct. 2457 (1975) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.").  Although strict adherence to the rule is important, there are some recognized exceptions to the exhaustion requirement.  Id. at 145.  In particular, the Fourth Circuit has recognized that "[i]f the outcome would 'predictably be futile' the doctrine of exhaustion would not apply."  Guerra, 942 F.2d at 276 (citing Dooley v. Ploger, 491 F.2d 608, 614-15 (4th Cir. 1974)); see also Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997) ("[A] plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable

40

harm."). When determining whether to excuse the exhaustion requirement, a "court should be flexible" and "look to the exhaustion rule's goals of preserving the separation of powers between the branches of the government and conserving judicial resources." <u>Skubel</u>, 113 F.3d at 334.

The parties in this case disagree on whether Syngenta did or did not exhaust its administrative remedies regarding Cedar's end use registrations.[32] However, assuming *arguendo* that Syngenta did not properly petition EPA regarding Cedar's end use registrations, it appears such an effort would most likely have been futile. Syngenta petitioned EPA to deny related registrations, both metolachlor and end use, on at least seven different occasions. All of these petitions were denied by EPA. Additionally, EPA has already granted "at least seventeen" metolachlor product registrations, including several end use registrations, has not denied a single application, and has made no representations that it is inclined to reverse these applications. <u>See</u> <u>Hyatt v. Heckler</u>, 579 F. Supp. 985, 999 (W.D.N.C. 1984) (finding exhaustion would serve no useful purpose when Secretary insists on the validity of her rulings and has made no representation that they are subject to change). Thus, requiring Syngenta to file another petition specific to Cedar's end

_____

[32] Syngenta contends that it did exhaust its administrative remedies by incorporating Cedar's end use applications in its petitions to deny Cedar's other applications upon learning of them and that EPA's subsequent granting of Cedar's end use registration denied Syngenta's petition. (Pl's Resp. to Mot. Dismiss 11.) MANA replies that Syngenta's "purported challenge" to Cedar's end use applications was insufficient and "hardly a way to put in controversy" the issue before EPA. (MANA's Reply 2.)

41

use registrations would likely result in Syngenta's immediate return to this Court after EPA again denied its efforts.  See Skubel, 113 F.3d at 334 (explaining that previous activities suggest that requiring plaintiff to exhaust remedies would be futile) (citing, Brown v. Secretary of HHS, 46 F.3d 102, 114-15 (1st Cir. 1995) (holding exhaustion was futile where it appeared the agency had taken a firm stand)); Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 335 (4th Cir. 1983) (holding that because claims were sufficiently similar to those already denied there was an inevitable lack of success such that exhaustion was excused).

Finally, there is no evidence that requiring Syngenta to exhaust this administrative remedy would aid in the completion of the administrative record. See Weinberger v. Salfi, 422 U.S. at 766 (stating that compilation of administrative record adequate for judicial review is one of the reasons for requiring exhaustion).  Syngenta contends that its objections to Cedar's end use registrations are identical to those raised in its petition to deny the other metolachlor registrations.  Additionally, the end use applications stem from the metolachlor registrations and involve much of the same data.  The administrative record in this case includes information regarding the EPA's decision to grant all of the metolachlor registrations at issue and appears adequate for judicial review. Thus, the record building goal of exhaustion would not be furthered by requiring Syngenta to submit petitions to deny Cedar's end use applications.

Because the purposes of the exhaustion requirement would not be served by

requiring Syngenta to exhaust the administrative remedies, if any remain, Syngenta's claims regarding Cedar's end use products will not be dismissed at this time.

X.

For the foregoing reasons, Defendant EPA's Motion for Partial Judgment on the Pleadings [Doc. #153], as joined by Defendant Drexel [Doc. #149], will be GRANTED as it requests dismissal of Counts III, V, and VI, and will be DENIED as it requests dismissal of Counts IV and VII.  Similarly, Defendant Sipcam's Motion to Dismiss [Doc. #141] will be GRANTED as it relates to Count III, but DENIED as it relates to Count IV.  EPA's Motion for Partial Dismissal of Complaint [Doc. #48] and Sipcam's original Motion to Dismiss [Doc. #52] are therefore MOOT.

Defendant MANA's Motion to Dismiss Counts I through VII for failure to exhaust administrative remedies [Doc. #169] will be DENIED in full.

This the day of August 8, 2006

                                          /s/ N. Carlton Tilley, Jr.
                                          United States District Judge